# STATE OF NORTH CAROLINA

_____Mecklenburg_____ County

File No. 18 CVS 24073

In The General Court Of Justice
☐ District ☒ Superior Court Division

| Name Of Plaintiff | |
| --- | --- |
| David Woodruff | |
| Address | |
| c/o Vennum PLLC, P.O. Box 12105 | |
| City, State, Zip | |
| Charlotte | NC 28220 |

**CIVIL SUMMONS**
☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

G.S. 1A-1, Rules 3 and 4

### VERSUS

| Name Of Defendant(s) |
| --- |
| CCBCC, Inc., CCBCC Operations, LLC, Coca-cola Bottling Co. Consolidated, Red Classic Services, LLC, Red Classic Transit, LLC, and Red Classic Transportation Services, LLC |

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

### To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 5 | Name And Address Of Defendant 6 |
| --- | --- |
| Red Classic Transit, LLC | Red Classic Transportation Services, LLC |
| c/o Reg. Agent CT Corporation System | c/o Reg. Agent CT Corporation System |
| 160 Mine Lake Court, Suite 200 | 160 Mine Lake Court, Suite 200 |
| Raleigh NC 27615-6417 | Raleigh NC 27615-6417 |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued 12.21.18 | Time 2.47 ☐ AM ☒ PM |
| --- | --- | --- |
| Elizabeth Vennum | Signature | |
| Vennum PLLC | | |
| P.O. Box 12105 | | |
| Charlotte NC 28220 | ☐ Deputy CSC ☐ Assistant CSC ☒ Clerk Of Superior Court | |

| ☐ **ENDORSEMENT (ASSESS FEE)** This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time ☐ AM ☐ PM |
| --- | --- | --- |
| | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** _Many counties have_ **MANDATORY ARBITRATION** _programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed._

(Over)

Exhibit A

Case 3:19-cv-00050-GCM   Document 1-1   Filed 01/31/19   Page 1 of 21

| | | RETURN OF SERVICE | | |
|---|---|---|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

Case 3:19-cv-00050-GCM   Document 1-1   Filed 01/31/19   Page 2 of 21

**STATE OF NORTH CAROLINA**

**MECKLENBURG COUNTY**

FILED

**IN THE GENERAL COURT OF JUSTICE**
**SUPERIOR COURT DIVISION**
**18-CVS-**

MECKLENBURG COUNTY, C.S.C.

David Woodruff

                            **Plaintiff,**

v.

CCBCC, Inc.,

CCBCC Operations, LLC,

Coca-cola Bottling Co. Consolidated,

Red Classic Services, LLC,

Red Classic Transportation Services, LLC,

Red Classic Transit, LLC,

                            **Defendants.**

                            **Complaint**
                         **(Jury Demand)**

      NOW COMES Plaintiff, David Woodruff, and alleges and complains of the Defendants as follows:

**Parties**

      1.     Plaintiff, David Woodruff ("Mr. Woodruff") is a citizen and resident of Pensacola, Escambia County, Florida.

      2.     Defendant **CCBCC, Inc.** is a Delaware corporation authorized to conduct business in North Carolina and with its principal office located at 4115 Coca Cola Plaza, Charlotte, Mecklenburg County, North Carolina 28211-3400.

           a.     As reflected in official filings with the North Carolina Secretary of State, Defendant CCBCC, Inc. is engaged in the business of "Employee Leasing."

1

3.    Defendant **CCBCC Operations, LLC** is a Delaware limited liability company authorized to conduct business in North Carolina and with its principal office located at 4115 Coca-Cola Plaza, Charlotte, Mecklenburg County, North Carolina 28211-3400.

a.    As reflected in official filings with the North Carolina Secretary of State, Defendant CCBCC Operations, LLC is engaged in the business of "soft drink sales and distribution."

b.    As reflected in official filings with the North Carolina Secretary of State, Defendant CCBCC Operations, LLC is managed by "Coca-cola Bottling Co. Consolidated."

4.    Defendant **Coca-cola Bottling Co. Consolidated** is a Delaware corporation authorized to conduct business in North Carolina and with its principal office located at 4115 Coca-Cola Plaza, Charlotte, Mecklenburg County, North Carolina 28211-3400.

a.    As reflected in official filings with the North Carolina Secretary of State, Defendant Coca-cola Bottling Co. Consolidated is engaged in the business of "soft drink sales and distribution."

b.    Domain name registration records reflect that the domain name "Redclassic.com" is registered to Defendant Coca-cola Bottling Co. Consolidated at its principal office in Charlotte.

5.    Defendant **Red Classic Services, LLC** is a North Carolina limited liability company with its principal office located at 1800 Continental Boulevard, Suite 400, Charlotte, Mecklenburg County, North Carolina 28273.

a.    As reflected in official filings with the North Carolina Secretary of

2

State, Organizer Cheryl A. Hansen amended the Articles of Organization of Port Investment Company, LLC to change its name to Red Classic Services, LLC in December of 2010.

      b.     As reflected in official filings with the North Carolina Secretary of State, Defendant Red Classic Services, LLC is managed by "CCBCC Operations, LLC."

6.     Defendant **Red Classic Transit, LLC** is a North Carolina limited liability company with its principal office located located at 1800 Continental Boulevard, Suite 400, Charlotte, Mecklenburg County, North Carolina 28273.

      a.     As reflected in official filings with the North Carolina Secretary of State, Defendant Red Classic Transit, LLC is managed by "Red Classic Transportation Services, LLC."

7.     Defendant **Red Classic Transportation Services, LLC** is a North Carolina limited liability company with its principal office located at 1800 Continental Boulevard, Suite 400, Charlotte, Mecklenburg County, North Carolina 28273.

      a.     As reflected in official filings with the North Carolina Secretary of State, Organizer Cheryl A. Hansen filed Articles of Organization establishing Red Classic Transportation Services, LLC in November of 2010.

      b.     As reflected in official filings with the North Carolina Secretary of State, Defendant Red Classic Transportation Services, LLC is managed by "Red Classic Services, LLC."

3

8.      Defendants CCBCC. Inc., CCBCC Operations, LLC, Coca-cola Bottling Co. Consolidated, Red Classic Services, LLC, Red Classic Transit, LLC, Red Classic Transportation Services, LLC (hereinafter, collectively, the "Red Classic Defendants" or "Defendants"), constitute a single enterprise or joint employer because they have owners in common, share resources, operate as alter egos of one another, and thus each exercised significant control over Mr. Woodruff's employment.

## Jurisdiction and Venue

9.      The Superior Court has jurisdiction over this matter pursuant to N.C. Gen. Stat. § 7A - 243 as the amount in controversy exceeds twenty-five thousand dollars ($25,000).

10.     Venue is proper in Mecklenburg County pursuant to N.C. Gen. Stat. § 1-77 as the Defendants' principal office is headquartered in Charlotte, Mecklenburg County, North Carolina and the cause of action arises out of Mr. Woodruff's employment with the Defendants out of their headquarters in Charlotte, Mecklenburg County, North Carolina.

## NATURE OF THE ACTION

11.     This is a proceeding to recover damages caused by Defendants' violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADA") and the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2612 *et seq.,* as well as for wrongful discharge in violation of public policy (N.C. Gen. Stat. §§ 143-422.2 *et seq.*).

12.     Mr. Woodruff seeks equitable relief, monetary relief, compensatory damages, attorney's fees and costs, and punitive damages pursuant to 42 U.S.C.§ 2000e(g), 29 U.S.C.§ 2617(a), and North Carolina law

4

## PROCEDURAL REQUIREMENTS

13.   Mr. Woodruff has satisfied all FMLA procedural requirements as follows:

   a.   Defendants are employers within the meaning of 29 U.S.C. § 2611(4), § 2617 as they are entities in an industry affecting commerce and they employed fifty or more employees in addition to Mr. Woodruff for each workday for twenty or more weeks prior to Mr. Woodruff's termination. All Red Classic Defendants shared a joint interest and acted in furtherance of that interest as employers with the ability to direct Mr. Woodruff's employment.

   b.   Mr. Woodruff is an eligible employee within the meaning of 29 U.S.C. § 2611(2) because at the time of his termination, he had worked at least 1250 hours in a year at a work location with at least fifty other employees within a 75-mile radius.

   c.   Mr. Woodruff has a serious health condition within the meaning of 29 U.S.C. § 2611(11) because he had a physical condition that required surgery and a lengthy recovery period qualifying him for leave pursuant to 20 U.S.C. § 2612(1)(1).

   d.   Mr. Woodruff brings this suit within two (2) years from the date of Defendants' violation of his rights under the FMLA, which is also within the three (3) year statute of limitations for willful violations.

14.   Mr. Woodruff has satisfied all ADA procedural requirements as follows:

   a.   The Red Classic Defendants are employers within the

5

meaning of Sections 701(b), (g) and (h) of Title VII of the Civil Rights Act of 1964 because they are engaged in an industry affecting commerce and have fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks of the year.

b.      Mr. Woodruff was a qualified employee with a disability, in that he was able to perform the essential duties of his job with reasonable accommodation, namely the requested medical leave to undergo surgery and recovery, and Mr. Woodruff did perform his duties up until his termination.

c.      On or about January 17, 2018, Mr. Woodruff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), designated as EEOC Charge No. 425-2018-00367.

d.      Mr. Woodruff received a Notice of Right to Sue from the EEOC dated September 26, 2018 (see attached Exhibit "A").

e.      Within ninety (90) days of receiving the Notice of Right to Sue, Mr. Woodruff brings this suit.

## FACTUAL BACKGROUND

15.     Mr. Woodruff has been a commercial truck driver for more than thirty (30) years.

16.     On information and belief, the Red Classic Defendants are wholly-owned subsidiaries of the Coca-Cola Company and shared significant control over Mr. Woodruff's employment, shared responsibility for payroll and benefits, and jointly furnished equipment and provided training to Mr. Woodruff.

6

17.     Mr. Woodruff drove delivery trucks for Coca-Cola for many years, and then for the Red Classic Defendants from 2011 until 2013, when he left on good terms for a business opportunity in North Dakota.

18.     In the summer of 2015, Mr. Woodruff decided to return to commercial truck driving, so he contacted the Red Classic Defendants, who welcomed him back to the company.

19.     Mr. Woodruff began working for Defendants again in August of 2015, again driving a truck delivering, among other things, Coca-cola products.

20.     When Mr. Woodruff received his assigned truck, No. 2013, in early August of 2015, he discovered it was poorly-maintained and filthy, littered with urine-filled cups, trash, and rotten food. The truck did not have working air conditioning.

21.     Mr. Woodruff took photos of the truck's condition and sent them to then-CEO of Red Classic, Mr. Ron Drogan, as well as then-operations manager Paul Renosky.

22.     Although neither Mr. Drogan nor Mr. Renosky took action to address the condition of Mr. Woodruff's truck, Mr. Drogan did make a statement to the effect that it was unacceptable for a Red Classic driver to receive a truck in such deplorable condition.

23.     At one point in the late summer or early fall of 2015, Mr. Woodruff's assigned truck broke down completely when he was driving out of town, and he had to be put up in a motel for two weeks while the truck underwent repairs.

24.     The problems with the assigned truck were both structural and electrical.

25.     As a result of electrical problems, the assigned truck's headlights and interior lights would go out at random, and sometimes the whole truck would completely die.

26.     The air conditioning and heating in Mr. Woodruff's assigned truck failed

7

frequently.

27.     The roof of the assigned truck would leak water when it would rain, sometimes even waking Mr. Woodruff up during a sleeping break because water would leak in on him.

28.     When vehicle maintenance technicians took the roof panels off the truck to determine the cause of the leak, they discovered a buildup of black mold caused by the leakage.

29.     Mr. Woodruff's supervisor eventually quit his job out of frustration over maintenance and repair failures such as those with Mr. Woodruff's assigned truck.

30.     Before he left, however, the former supervisor informed Mr. Woodruff that the Red Classic Defendants knew the assigned truck had ongoing electrical problems because the driver who had Mr. Woodruff's assigned truck previously also quit his job out of frustration with the Defendants' failure to adequately address truck maintenance problems.

31.     In addition to electrical and mechanical problems specific to his assigned truck, Mr. Woodruff also grappled with the unpredictable glitches and errors in the "Rand McNally" device with which Defendants' trucks were fitted.

32.     The Randy McNally devices were supposed to provide GPS tracking, Hours of Service compliance records; and other vehicle analytics for Defendants' trucks, however the devices frequently provided incorrect information.

33.     In a drivers' meeting, DSD manager Ron Starnes told several drivers, including Mr. Woodruff, that the Rand McNally devices were so inaccurate, one had reported a driver as speeding during a time when his truck was parked.

34.     Mr. Woodruff spoke with company mechanics repeatedly about the Rand McNally errors, but no one was able to troubleshoot the device successfully.

8

35.     Several times during the period of August 2015 through his termination, Mr. Woodruff's Rand McNally incorrectly reported him as not compliant with mandatory rest periods, despite Mr. Woodruff's faithful adherence to hours of service guidelines

36.     One record reflected that Mr. Woodruff worked more than fifteen (15) hours without a break, and another that he worked more than twenty (20), but when each of these incorrect records appeared, Mr. Woodruff alerted management to the inaccuracy.

37.     Mr. Woodruff had additional conversations with Operations Manager Mike Stevens about the computer issues and asked if there was anything else he should be doing to prevent the inaccuracies.

38.     Mr. Stevens told Mr. Woodruff he was doing a great job, and that the company knew the Rand McNally's readouts were wildly inaccurate, so Mr. Woodruff did not need to worry about being reprimanded for readouts that incorrectly reflected hours of service violations.

39.     Like all of Defendants' drivers, Mr. Woodruff was eligible for an annual safety bonus.

40.     Drivers would only receive the full safety bonus if they had no logbook irregularities, safety violations, or other similar incidents during the year.

41.     Mr. Woodruff received his full safety bonus every year he worked for Defendants, including for 2017, the year he was terminated.

42.     After suffering for many years with degenerative arthritis in his knee, Mr. Woodruff decided to undergo knee replacement surgery in 2017.

43.     In May of 2017, Mr. Woodruff started to plan for twelve weeks of FMLA leave, beginning with his surgery in August of 2017, and spanning the required post-operation recovery

9

and rehabilitation period.

44.     In June and July of 2017, Mr. Woodruff prepared for his knee surgery by attending multiple doctor's appointments, during which he underwent pre-operation blood tests and had X-rays performed.

45.     Mr. Woodruff paid around one thousand dollars ($1,000) from his Health Savings Account to cover the medical visits necessary to prepare for surgery.

46.     The Federal Motor Carrier Safety Association issues "Hours of Service" regulations for commercial drivers, governing the maximum number of hours they can drive and the minimum amount of rest they must take between periods of driving as a safety measure.

47.     Three weeks before Mr. Woodruff's scheduled knee surgery and the start of his FMLA leave, he was informed that his Rand McNally reported an hours of service violation, and he was being suspended.

48.     In response to this claim, Mr. Woodruff produced documentation that the actual time he arrived at his delivery location (a Target store) on the relevant date proved there was no violation.

49.     Defendants' management refused to listen to Mr. Woodruff and ignored his evidence.

50.     Two weeks before his scheduled knee replacement surgery and the start of his FMLA leave, Defendants terminated Mr. Woodruff's employment based on the unreliable Rand McNally's inaccurate report of a two-hour discrepancy in Mr. Woodruff's hours of service.

51.     Stunned that Defendants would ignore years' worth of experience with the malfunctioning Rand McNally devices and rely on their faulty readout as a reason for

10

terminating, Mr. Woodruff sought help from Mr. Tim Lucas, who refused to help, saying that Defendants' decision was final, regardless of the known computer inaccuracies.

52.     The Red Classic Defendants terminated Mr. Woodruff for allegedly violating safety regulations, specifically, the Hours of Service restrictions.

53.     An employee who committed a safety violation would not receive the full safety bonus, yet the Company awarded Mr. Woodruff his full safety bonus, *after* his termination.

54.     The Red Classic Defendants' awarding Mr. Woodruff his safety bonus indicates the Defendants knew Mr. Woodruff did not violate the Hours of Service restrictions or any other safety policy, and that Defendants' stated reason for terminating Mr. Woodruff was merely pretext.

55.     The fact that Mr. Woodruff's Rand McNally readouts had erroneously reflected far more serious Hours of Service violations in the past, and the Defendants acknowledged the discrepancy and did not penalize Mr. Woodruff also indicates that the stated reason for termination was pretextual.

56.     Further indication that Defendants' stated reason was pretextual demonstrated by the fact that in November of 2018, Defendants' Regional General Manager Andy Baratta held a meeting in Charlotte with around 20 drivers, during which he admitted the Rand McNally devices were no good.

57.     Mr. Barratta continued on to say that the unreliability of the Rand McNally devices had been an ongoing problem for many years, since the Defendants first installed the devices in their fleet.

58.     Additionally, Mr. Barratta said the Defendants were finally going to replace all the

11

devices within the year.

59. Because of his termination, Mr. Woodruff suffered lost wages and lost benefits, and was unable to have his knee replacement surgery.

60. Mr. Woodruff's knee condition has deteriorated to the point that he can barely walk, and suffers excruciating pain when trying to do so.

61. As a direct and proximate result of Defendants' violation of state and federal law by wrongfully terminating Mr. Woodruff, he suffered damages, *inter alia*, lost wages, lost benefits, and other economic losses in an amount to be determined by jury at a trial in this matter.

62. Mr. Woodruff is entitled to all of his benefits of employment, including but not limited to, back pay, front pay, health insurance, life insurance, and retirement benefits.

63. Mr. Woodruff is further entitled to recover reasonable attorney's fees, the costs and the expenses of this action and such interest as may be allowed by law.

## CAUSES OF ACTION AND CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Discrimination in Violation of the Americans with Disabilities Act

64. Mr. Woodruff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

65. As set forth herein, Mr. Woodruff was qualified to perform his duties with reasonable accommodation, and indeed did perform these duties up until his termination.

66. Mr. Woodruff has a disability, namely degenerative arthritis of the right knee, that substantially and severely impairs his ability to perform several major life activities including walking and driving a vehicle. At the time of his termination, Mr. Woodruff would have been able to perform the duties of his job had he been granted the requested accommodation of

12

medical leave for surgery.

67.     Mr. Woodruff has a record of a disability in that he has sought treatment for degenerative arthritis of his right knee beginning in December 2015.

68.     The Red Classic Defendants knew of Mr. Woodruff's disability and of his request for the reasonable accommodation of taking medical leave to undergo corrective surgery and rehabilitation for his right knee.

69.     Mr. Woodruff's taking medical leave would not have been unduly burdensome to the Red Classic Defendants.

70.     In violation of Mr. Woodruff's rights under the ADA, Defendant Red Classic refused to grant the requested accommodation, choosing instead to terminate his employment.

71.     In violation of Mr. Woodruff's rights under the ADA, Defendant Red Classic terminated Mr. Woodruff because of his disability, and Defendants' stated reason for terminating Mr. Woodruff was clearly pretextual.

72.     As a direct and proximate result of Defendants' actions in this respect, Mr. Woodruff suffered damages, inter alia, lost wages, lost benefits, and other economic losses in an amount to be determined by a jury but believed to be greater than twenty-five thousand dollars ($25,000.00).

## SECOND CAUSE OF ACTION
### Retaliation in Violation of the Americans with Disabilities Act

73.     Mr. Woodruff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

74.     In violation of Mr. Woodruff's rights under the ADA, Defendant Red Classic terminated Mr. Woodruff in retaliation for asserting his rights pursuant to the ADA and

13

requesting the reasonable accommodation of medical leave.

75.     As a direct and proximate result of Defendants' actions in this respect, Mr. Woodruff suffered damages, inter alia, lost wages, lost benefits, and other economic losses in an amount to be determined by a jury but believed to be greater than twenty-five thousand dollars ($25,000.00).

### THIRD CAUSE OF ACTION
### Violation of the Family and Medical Leave Act (FMLA)

76.     Mr. Woodruff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

77.     Mr. Woodruff was an eligible employee under the FMLA, and Defendants are employers as defined in the FMLA.

78.     Mr. Woodruff was entitled to FMLA leave and gave notice to Defendants of his intention to take such leave.

79.     Mr. Woodruff was denied benefits to which he was entitled under the FMLA, namely to retaining his job while taking up to twelve weeks of unpaid medical leave.

80.     As a direct and proximate result of Defendants' actions in this respect, Mr. Woodruff suffered damages, inter alia, lost wages, lost benefits, and other economic losses in an amount to be determined by a jury but believed to be greater than twenty-five thousand dollars ($25,000.00).

### Wrongful Discharge in Violation of Public Policy (WDPP)
### (Disability Discrimination)

81.     Mr. Woodruff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

14

82.     The actions of Defendants as set forth herein constitute wrongful discharge in violation of the public policy of the State of North Carolina prohibiting employees from being discharged on account of disability, specifically, the North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.2, *et seq.*

83.     At all times relevant herein, Mr. Woodruff was satisfying Defendants' legitimate performance expectations.

84.     Mr. Woodruff's disability and/or his request for a reasonable accommodation was or were substantial factors in Defendants' decision to terminate Mr. Woodruff's employment.

85.     As a direct and proximate result of Defendants' conduct, in this respect, Mr. Woodruff has suffered damages, *inter alia*, lost wages, lost benefits, damage to reputation, mental stress, and pain and suffering in an amount to be determined at trial but believed to be in excess of twenty five thousand dollars ($25,000.00)

### Punitive Damages under North Carolina Common Law

86.     Mr. Woodruff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

87.     As set forth herein, the Red Classic Defendants' actions, including refusing to honor Mr. Woodruff's requested accommodations, retaliating against Mr. Woodruff for requesting an accommodation, and creating a pretext for terminating his employment indicate that Defendants acted with conscious and intentional disregard and indifference to Mr. Woodruff's right to hold employment without discrimination or abridgement by his employer on account of his disability.

88.     The officers, supervisors, directors, and/or managers of the Red Classic

15

Defendants participated in or condoned the conduct constituting the aggravating factors giving rise to punitive damages.

89.     Pursuant to N.C. Gen. Stat. §1D, *et seq.*, Mr. Woodruff contends that punitive damages are required to punish Defendants for their wrongful acts and to deter Defendants and others from committing similar wrongful acts.

90.     Under the circumstances of this case, in determining punitive damages, the Court should consider evidence that relates to the following:

a.     The reprehensibility of Defendants' motives and conduct, including evidence of bad motive, recklessness, wantonness, willful injury, or a wrongful act without a reasonable excuse;

b.     The likelihood at the relevant time of serious harm to Mr. Woodruff;

c.     The degree of the Defendants' awareness of the probable consequences of its conduct;

d.     The duration of the Defendants' conduct;

e.     The actual damages suffered by Mr. Woodruff;

f.     Any attempt at pretext or concealment by Defendants of the facts or consequences of their conduct;

g.     The existence and frequency of any similar past conduct by Defendants;

h.     Whether Defendants profited by their discriminatory conduct;

i.     Defendants' ability to pay punitive damages as evidenced by its

16

revenue or net worth.

48.     Due to the aforesaid wanton, reckless, intentional conduct of the Red Classic Defendants, Mr. Woodruff is entitled to punitive damage in such amount as the Court may deem just and proper.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, David Woodruff demands a trial by jury of all issues so triable and respectfully prays for judgment against Defendants as follows:

1.     For a money judgment against the Red Classic Defendants, jointly and severally, for their violation of the Americans with Disabilities Act, as amended, and the Family and Medical Leave Act;

2.     For a money judgment against the Red Classic Defendants, jointly and severally, for wrongful discharge in violation of the North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.1, *et seq.*, representing all lost benefits of employment and compensatory damages, including but not limited to lost wages, lost employment benefits, loss of status, loss of reputation, and inconvenience in an amount to be determined at a trial of the action.

3.     For a money judgment against the Red Classic Defendants for punitive damages, under both the common law and pursuant to N.C. Gen. Stat. § 1D-1 *et seq.* for wrongful discharge because of malicious, willful, and wanton violation of the North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.2, for an amount which shall be determined at a trial of the action.

4.     Award Mr. Woodruff damages for lost wages, lost benefits, damage to reputation, and other irreparable injury in an amount which shall be determined at a trial of the action, of and

17

from the Defendants jointly and severally as their liabilities may appear;

5.      That the Court permanently enjoin the Red Classic Defendants from violating the provisions of the FMLA, the ADA, and the North Carolina Equal Employment Practices Act;

6.      For pre-judgment and post-judgment interest on all amounts found due to Mr. Woodruff at the legal rate;

7.      For reasonable attorney's fees as permitted by law;

8.      For a trial by jury on all triable issues; and

9.      For such further and additional relief at law and equity as the Court may deem just and proper.

THIS THE 21st DAY OF DECEMBER, 2018.

VENNUM PLLC

By: _____

ELIZABETH K. VENNUM
NC State Bar No. 49747
P.O. Box 12105
Charlotte, NC 28220
(980) 338-0111
*Counsel for Plaintiff David Woodruff*

18

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### Exhibit A

## DISMISSAL AND NOTICE OF RIGHTS

To: David Woodruff
5700 Graymont Lane
Pensacola, FL 32526

From: Charlotte District Office
129 W. Trade Street
Suite 400
Charlotte, NC 28202

| | |
|---|---|
| ☐ | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 425-2018-00367 | Debbie M. Smith, Investigator | (704) 954-6449 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☒ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

Thomas M. Colclough,
Acting Director

SEP 26 2018

*(Date Mailed)*

Enclosures(s)

cc: Elarbee Thompson
Attorney
800 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303

Phillip Kegler
SPIELBERGER LAW GROUP
202 South Hoover Boulevard
Tampa, FL 33609