# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:19-CV-00050

DAVID WOODRUFF,

    Plaintiff,

v.

RED CLASSIC TRANSIT, LLC,

    Defendant.

**ORDER**

**THIS MATTER** is before the Court on Defendant's initial Motion to Dismiss (Doc. No. 4) filed February 6, 2019 and subsequent Motion to Dismiss (Doc. No. 7) filed March 6, 2019. Plaintiff responded (Doc. No. 9), and Defendant replied (Doc. No. 10). This matter is ripe for adjudication. For the following reasons, Defendant's Motion is granted in part and denied in part.

## I. BACKGROUND

### A. Facts

Defendant hired Plaintiff in August 2015 to work as a commercial truck driver. (Doc. No. 6, at 5). In mid-2017, "the degenerative arthritis in [Plaintiff's] knee, with which he had been suffering for many years, finally progressed to the point where he found himself unable to perform major life activities such as walking, standing, crouching, climbing into and out vehicles, and driving." (Doc. No. 6, at 8). As a result of Plaintiff's knee condition, he sought "accommodation for his disability" by requesting "twelve weeks of [Family and Medical Leave Act ("FMLA")] leave [in May 2017] so that [he] could undergo [and recover from] knee surgery." (Doc. No. 6, at 8). Further, Plaintiff called his supervisor, Matt Gin, "informing and/or reminding him about [Plaintiff's] degenerative knee condition, advising him of [Plaintiff's] need to undergo surgery and

1

physical recovery, and requesting Mr. Ginn's guidance regarding when to schedule FMLA leave." (Doc. No. 6, at 9). Plaintiff also provided Defendant with "certification from [his] physician," explaining "his inability to walk immediately after surgery, and that he could only gradually increase his ability to walk . . . as his knee healed." (Doc. No. 6, at 9).

Soon after requesting FMLA leave, Mr. Ginn informed Plaintiff that he had violated safety standards. (Doc. No. 6, at 9). Plaintiff was suspended, and then, on July 18, 2017, Plaintiff was terminated. (Doc. No. 6, at 10). Because Plaintiff received a "safety bonus" every year he worked for Defendant, including the year that he was terminated, Plaintiff believes Defendant's reason for terminating him was not related to safety. (Doc. No. 6, at 8, 11). Instead, Plaintiff believes Defendant terminated him as a result of unlawful discrimination based on his disability and retaliation for Plaintiff's attempt to take FMLA leave. (Doc. No. 6, at 11).

**B. Procedure**

Defendant filed its initial Motion to Dismiss on February 6, 2019, requesting that the Court dismiss the entire Complaint. (Doc. No. 4). Soon after, Plaintiff filed an Amended Complaint, alleging that Defendant (1) discriminated against him in violation of the Americans with Disabilities Act ("ADA"), (2) retaliated against him in violation of the ADA, (3) violated the Family Medical Leave Act ("FMLA), and (4) wrongfully discharged him in violation of N.C.G.S. § 143-422.22. (Doc. No. 6, at 12-19). Plaintiff also made a claim (5) for punitive damages. (Doc. No. 6, at 17).

In response to the Amended Complaint, Defendant filed a subsequent Motion to Dismiss. (Doc. No. 7). In that Motion, Defendant argued that because (1) Plaintiff did not state a claim for ADA discrimination, (2) Plaintiff did not state a claim for ADA retaliation, and (3) Plaintiff's

North Carolina claims rely upon Plaintiff's faulty ADA claims, four of Plaintiff's five claims should be dismissed under Fed. R. Civ. P. 12(b)(6). (Doc. No. 8, at 4).[1]

## II. STANDARD OF REVIEW

"Federal Rule of Civil Procedure 8(a)(2) requires . . . a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotations omitted). Fed. R. Civ. P. 12(b)(6) provides an avenue to attack a complaint where the "grounds" of a plaintiff's "entitle[ment] to relief" are insufficient. *Id.* (citation omitted). To survive such a motion, a plaintiff must provide more than "just a formulaic recitation of the elements," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," that claim should be dismissed. *Id.* at 558.

## III. DISCUSSION

Plaintiff's first, second, fourth, and fifth claims do not survive Defendant's Rule 12(b)(6) challenge because the allegation's in Plaintiff's Amended Complaint cannot raise a claim of entitlement to relief.

### A. Plaintiff's ADA Claim of Discrimination

Defendant argues that Plaintiff's ADA claim for discrimination is not sufficiently supported by factual allegations that Plaintiff is disabled. (Doc. No. 8, at 8-9). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be

---

[1] Defendant also argues that Plaintiff's ADA claims should be dismissed under Fed. R. Civ. P. 12(b)(1) because they are not timely. (Doc. No. 8, at 4). However, the Court need not address that argument because, as the Court explains below, dismissal of Plaintiff's ADA claims is appropriate for other reasons.

excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A qualified individual is defined as someone who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such an individual holds or desires." *Id.* § 12111(8). Disability is defined as "a physical or mental *impairment* that *substantially limits* one or more major life activities of [an] individual." *Id.* § 12102(1)(A). "Among the factors courts should consider in making the substantial limitation determination are the impairment's 'nature and severity' and 'expected duration.'" *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 257 (4th Cir. 2006) (citing 29 C.F.R. § 1630.2(j)(2)(i)-(ii)). Thus, "temporary impairment, such as recuperation from surgery, will generally not qualify as a disability under the ADA." *Pollard v. High's of Balt., Inc.*, 281 F.3d 462, 468 (4th Cir. 2002). "An impairment simply cannot be a substantial limitation on a major life activity if it is expected to improve in a relatively short period of time."[2] *Id.* Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12111(2)(A).

---

[2] *Pollard* has been challenged as "based on . . . Supreme Court precedent" that has since been modified by passage of the ADA Amendments Act of 2008 ("ADAAA"). *Todd v. Prince George's County*, No. RWT 13cv1776, 2014 U.S. Dist. LEXIS 39815, *16 (D. Md. March 26. 2014). In *Todd*, the court explained that "[i]n passing the ADAAA, Congress explicitly sought to broaden the definition of disability under the Act." *Id.* While that is true, the ADAAA does not conflict with *Pollard*'s holding that temporary impairments, if expected to improve, cannot satisfy the substantial impairment requirement. *See* 281 F.3d at 468. Instead, the ADAAA implicitly supports that proposition by specifying that "episodic" impairments or impairments "in remission . . . substantially limit a major life activity *when active*." ADAAA § 4, 122 Stat. at 3555 (codified at 42 U.S.C. § 12102(4)(E)). Episodic impairments are not temporary—they are, by definition, *recurring*. Episode, *The Merriam-Webster Dictionary* (2019). Thus, there is no expectation that they will improve within a short period of time, and the ADAAA does not explicitly or implicitly overturn *Pollard*'s holding as it relates to temporary impairments under the ADA.

Here, Plaintiff's factual allegations do not support his claim of disability for two reasons. First, the only fact that Plaintiff alleges in support of his conclusory assertion that his knee condition substantially limited his ability to walk, climb, drive, and work is that, at the time of the Amended Complaint, "[Plaintiff's] knee condition has deteriorated to the point that he can barely walk, and suffers excruciating pain when trying to do so." (Doc. No. 6, at 11-12). In other words, Plaintiff never alleges *any facts* supporting his statement that his knee condition substantially limited his ability to work *at the time that he was terminated*.[3] Even the statements made by Plaintiff's physician relate to the potential side effects of the planned surgery (and Plaintiff's temporary inability to walk *as a result of that surgery*)—they are not assessments of Plaintiff's knee condition. (Doc. No. 6, at 9).

Second, even if Plaintiff had alleged some facts to support his conclusory statements that his knee condition limited his ability perform a major life activity, Plaintiff's condition was temporary and expected to improve within a short period of time. According to Plaintiff, his physician certified that Plaintiff would be able to "gradually increase his ability to walk . . . as his knee healed." (Doc. No. 6, at 9). Thus, Plaintiff's impairment was temporary and does not qualify as a disability. *See Pollard*, 281 F.3d at 468. Because Plaintiff failed to allege sufficient facts to support his claim for ADA discrimination, Plaintiff's first claim is dismissed. *See Twombly*, 550 U.S. at 555.

## B. Plaintiff's ADA Claim of Retaliation

Defendant also argues that Plaintiff's ADA claim for retaliation failed to allege that Plaintiff requested a reasonable accommodation. (Doc. No. 8, at 12). The elements of a retaliation

---

[3] Nor does Plaintiff allege that there is any record of impairment or that Defendant regarded him as having an impairment. *See* 42 U.S.C. § 12102(2).

5

claim under the ADA are that (1) the plaintiff engaged in protected conduct, (2) he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action. *Reynolds v. Amer. Nat. Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012) (citing *A Soc'y Without a Name v. Commonwealth of Va.*, 655 F.3d 342, 350 (4th Cir. 2011)). Regarding the first prong, "ADA's retaliation provision only prohibits retaliation against a person because the person" engaged in conduct protected by the ADA. *Id.* (citing 42 U.S.C.S. § 12203). Where plaintiffs engage in conduct protected by some mechanism other than the ADA, no ADA claim exists. *Id.* (dismissing an ADA claim based on a workers' compensation request because that request was "not something that is covered by the ADA.").

Here, Plaintiff provides no indication, at all, that he requested reasonable accommodation for his alleged disability. Plaintiff indicates that "Defendant knew of [Plaintiff's] disability and of his request for the reasonable accommodation of taking medical leave to undergo corrective surgery and rehabilitation for his right knee because [Plaintiff] personally informed Mr. Ginn and Mr. Drogan." (Doc. No. 6, at 12). When that allegation is coupled with statements made in Plaintiff's factual background, it is clear that Plaintiff only sought permission to "exercise his federally protected right of up to twelve weeks of FMLA leave, so that [he] could undergo surgery." (Doc. No. 6, at 8). Plaintiff never alleges that he also requested reasonable accommodation (under the ADA) for his knee issues, and mere communication to Defendant that Plaintiff had a knee condition is not a request for an accommodation. *See Cruz v. McAllister Bros.*, 52 F. Supp. 2d 269, 287 (D.P.R. 1999) (A plaintiff's statement to defendant that he was taking medication was not evidence that he asked for an accommodation). Because Plaintiff has pled no facts showing that he was engaged in a protected activity under the ADA, Plaintiff's second claim (for ADA retaliation) is dismissed. *See Twombly*, 550 U.S. at 555.

### C. Plaintiff's NCEEPA Cause of Action

Next, Defendant next argues that Plaintiff's North Carolina Equal Employment Protection Act ("NCEEPA") claim fails for the same reasons that his ADA claims failed. (Doc. No. 8, at 12). "N.C.G.S. § 143-422.2 (2003) states [that] '[i]t is the public policy of [North Carolina] to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination . . . on account of race, religion, color, national origin, age, sex, or handicap.'" *Youse v. Duke Energy Corp.*, 171 N.C. App. 187, 193 (2005). The ultimate purpose of the NCEEPA and federal civil rights laws are the same: "the elimination of discriminatory practices in employment." *Dept. of Correction v. Gibson*, 308 N.C. 131, 141, 301 S.E.2d 78, 85 (1983). Accordingly, North Carolina courts "look to federal decisions for guidance in establishing . . . principles of law to be applied in discrimination cases." *Youse*, 171 N.C. App. at 193 (citing *Gibson*, 308 N.C. at 136). Thus, whether a person is discriminated against on the basis of his or her disability under the ADA and under N.C.G.S. § 143-422.2 is "the same factual issue[]." *Id.* at 194.

The Court determined above that Plaintiff's allegations in the Amended Complaint were not sufficient to state a claim of discrimination or retaliation under the ADA. Consequently, Plaintiff has also failed to make a claim under the NCEEPA, and Plaintiff's fourth claim is dismissed. *See Youse*, 171 N.C. App. at 194.

### D. Plaintiff's Request for Punitive Damages

Finally, Defendant argues that Plaintiff's request for punitive damages under N.C. Gen. Stat. § 1D-15(a) (2017) must be dismissed. N.C. Gen. Stat. § 1D-15(a) does not provide an independent cause of action for punitive damages. *See Collier v. Bryant*, 216 N.C. App. 419, 434

(2011). Because no underlying North Carolina claims have survived, Plaintiff's fifth claim, for punitive damages, is dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 7) is **GRANTED IN PART** and **DENIED IN PART.** Defendant's first (discrimination in violation of the ADA), second (retaliation in violation of the ADA), fourth (wrongful discharge in violation of NCEEPA), and fifth (punitive damages) claims are **DISMISSED WITH PREJUDICE.**[4] Plaintiff's third claim (violation of the Family and Medical Leave Act) remains.[5]

**IT IS SO ORDERED.**

Signed: September 24, 2019

Graham C. Mullen
United States District Judge

---

[4] The Court notes that Plaintiff has already filed an Amended Complaint (Doc. No. 6) in response to Defendant's initial Motion to Dismiss (Doc. No. 4).

[5] In Defendant's memorandum supporting its initial Motion to Dismiss, Defendant argued that Plaintiff's claim under the FMLA should be dismissed because Plaintiff did "not allege that [Defendant] had knowledge of Plaintiff's need for leave, which defeats any claim under the FMLA." Plaintiff addressed that issue in his Amended Complaint, alleging that he "gave notice to Defendant of his intention to take [FMLA] leave." (Doc. No. 6, at 14). He also explained that "around May of 2017," he "called his direct supervisor Matt Ginn . . . to inform [him] of his knee condition, and his need to undergo surgery and a lengthy recovery period." (Doc. No. 6, at 3). Perhaps due to the additional factual allegations made by Plaintiff in his Amended Complaint, Defendant's subsequent Motion to Dismiss requests only that "this Court dismiss Counts One, Two and Four of Plaintiff's Amended Complaint," not Plaintiff's third claim, for violation of the FMLA. (Doc. No. 7, at 2).